(Hamilton County Common Pleas Court.)
### EDWARD S. GATES v. CINCINNATI, COLUMBUS & WOOSTER TURNPIKE COMPANY.

Injunction will not lie at the suit of a taxpayer and resident to restrain the collection of toll within eighty rods of the corporate limits of a city or village where such limits have been enlarged.

The remedy of one traveling over such a pike is by mandamus against the city to institute appropriation proceedings against the company.

---

---

(Superior Court of Cincinnati—General Term. June, 1897.)
### FREEDERICK HEIDORN et al, v. CHARLOTTE K. WRIGHT.

---

*Leaseholds with restricted covenants.*

1. If a covenant in a lease restricts and qualifies the estate relative to the mode of its use, enjoynent or to the manner of its occupancy, is not unreasonable or unlawful, and the lease clearly shows the intention of the contracting parties to annex it to and make it appurtenant to tne leasehold estate, it runs with the land, and the assignee of the lessee is bound by it, although he is not named in the lease. A fortiori, if he is named, he is bound.

2. But whether such covenant technically at law runs with the land or not, equity will enjoin the assignee of the leasehold, if he have notice of it when he acquired the title, from violating its stipulations.

3. If the covenant appears in any instrument constituting a muniment of title, the assignee of the leasehold will be conclusively presumed to have notice.

4. A lease for ninty-nine years, renewable forever contained a covenant, stipulating, among other things, that the "demised premises or any part thereof. or any building thereon, shall not, at any time hereafter, be used or occupied * * * for a blacksmith shop * * or "for any other purposes than private dwelling houses, without the

[COYRIGHT, 1897, BY CARL G. JAHN.]

written consent of the trustees of Lane Seminary.'' The covenant was between the lessors (trustees of Lane Seminary) and their assigns, and the lessee and his assigns.

Held: That the covenant runs with the land : that a farrier is a blacksmith under the terms of the covenant, and that equity, at the instance of the assignee of the reversion, will enjoin the assignee of the leasehold from carrying on the business of a blacksmith on the premises.

HOLLISTER J. ; HUNT and JACKSON, JJ., concurring.

The questions in this case grew out of a covenant in a perpetual lease originally made to one Startzman by the trustees of Lane Seminary of a lot of land situated on Kemper Lane in the City of Cincinnati. This lot was a part of a large tract devised to the trustees for educational purposes. After several intermediate conveyances, the plaintiff in error, Heidorn, became the owner of the leasehold by deed. The covenant giving rise to the litigation reads:

"And, further, that the said demised premises, or any part thereof, or any building thereon, shall not, at any time hereafter, be used or occupied for manufacturing. keeping or vending ardent spirits, or for keeping a tavern or public house, or for a blacksmith shop, or for the manufacturing of soap or candles, or a livery stable, or for slaughtering animals, or for a butchershop or stable or a tin shop; and, further, that said premises shall not be occupied for any other purpose than private dwelling houses without the consent of said trustees of Lane Seminary ; and this lease, however, is made on this condition that if any installments of the rents hereby reserved shall remain unpaid for the space of six months after the same shall have become due, or if any other of the covenants herein contained on that part of Samuel Startzman, his heirs, executors administrators or assigns, to be done and performed, shall be violated and not fully kept, then and in either case this lease and the term hereby created shall cease and determine and be utterly void, and the said trustees of Lane Seminary, their successors or assigns, may thereupon forthwith re-enter upon the said demised premises, and hold the same as though this lease had never been executed, free and discharged of the same."

After the execution of the lease the trustees conveyed the reversion to Charlotte K. Wright, the defendant in error.

Heidorn erected a building on the premises, constructed in such a manner that the upper stories were available for dwelling purposes, and the ground floor was adapted to the business of making horse shoes and shoeing horses. The upper stories were in fact occupied by families, and the ground floor was used as designed. Horse shoes were made there with forge and anvil, with the usual attendant noises. When the building was erected, and the uses to which it

would be put became apparent, counsel for defendant in error called Heidorn's attention to the covenant in the lease, and that such use would be in violation of it.

Heidorn proceeded, notwithstanding, to carry on or to permit to be carried on, the business for which a part of the building was designed.

Thereupon the defendant in error brought an action to enjoin Heidorn from putting the property to such use, and after a full hearing, the court entered an order perpetually enjoining Heidorn and his wife, to whom. he had conveyed the property after the suit and who had been made a defendant, form the use or occupancy of the premises or any part thereof as a blacksmith shop or for blacksmithing purposes, or for any other than dwelling purposes. To reverse this order Heidorn filed a petition in error containing several assignments in error, but three of which were presented in argument as grounds for reversal. It is claimed that the building and the business carried on in a. part of it did not constitute a blacksmith shop in fact or in contemplation of law, and it is shown that one engaged in shoeing horses and making horse shoes is properly defined as a farrier. We may dismiss this claim, however, by the statement that while a blacksmith may not be a farrier, every farrrier who uses bellows, forge and anvil in making horse shoes is a blacksmith ; and this probably accords with the common understanding of that trade.

The second point made is that the owner of the reversion has waived the violation of the covenant by the acceptance of rent since the suit was begun. The answer to this claim is, that the owner is not seeking a forfeiture of the lease for a breach of its covenants, which would be waived by the acceptance of rent, but, on the contrary, she is endeavoring to have the integrity of the lease preserved and its contracts enforced.

The important contention in the case arises on the claim of plaintiffs in error that the covenant is personal in its nature, and does not run with the land, and that, therefore, the assignee of the leasehold is not bound by it.

Whether or not a covenant runs with the land is often a nice question, but we think that this covenant presents a case not open to doubt.

The covenant was entered into by the original lessee in behalf of himself, his heirs, personal representatives and assigns, with the lessors, their successors and assigns. The agreement positively prohibited the use of the property for any of the purposes named. It is true that a way was provided by which the prohibition might be removed, viz., by obtaining the consent of the trustees, but that stipulation had nothing to do with the existence or force of the covenant itself ; its only office was to relieve the estate of the restriction. The stipulation was in favor of the lessee and his assigns, and did not change the nature of the prohibition.

The prohibition exists for all time, unless the trustees voluntarily remove it.

In Spencer's case. Coke, part 5, 16a, (3 Co., 29,) it was resolved that: "If the lessee had covenanted for him and his assigns, that they would make a new wall upon some part of the thing demised, that for as much as it is to be done upon the land demised, that it should bind the assignee; for although the covenant doth extend to a thing to be newly made, yet it is to be made upon the thing demised, and the assignee is to take the benefit of it, and therefore shall bind the assignee by express words." This is the second solution. The first, so far as applicable, is: "When the covenant extends to a thing in esse, parcel of the demise, the thing to be done by force of the covenant is quodam modo annexed and appurtenant to the thing demised, and shall go with the land, and shall bind the assignee although he be not bound by express words." And the sixth resolution determines that a covenant to repair runs with the land.

In Tatem v. Chaplin, 2 H. Bl., 133, there was a covenant that the lessee, his executors and administrators, should constantly reside upon the demised premises during the demise. This was held to be binding on the assignee of the lessee, although he was not named, the court being "clearly of opinion that the covenant in question was quodam modo annexed and appurtenant to the thing demised, according to the first and sixth resolutions in Spencer's case." Cockson v. Cock, 2 Cro., Jac., 125, was a case in which the lessee covenanted to leave fifteen acres of the demised premises unploughed and for pasture; his assignee ploughed up all the land. It was held by all the court "that this covenant is to be performed by the assignee, although he be not named, because it is for the benefit of the estate, according to the nature of the soil; but to perform a collateral covenant, or to build de novo, or such like, shall not bind him unless named."

It is to be observed that the covenant in question does not require anything to be done by the lessee or his assignee, such as build a house; but that the "demised premises, or any part thereof, or any building thereon," shall not be used for a blacksmith shop or for other than dwelling purposes. The lessee took the property with a restriction upon its use. Instead of the right of absolute enjoyment, he received the estate with that right qualified and curtailed. The qualification was a limitation upon the use to which the property could be put, and it related to the very land itself. The subject matter to which the covenant related was in esse when the covenant was made. The case presents an even clearer illustration of a covenant running with the land than where the restriction applies to the use to which a house on the land at the time the covenant was entered into may be put. This covenant is, therefore, annexed to and is appurtenant to the land, and would run with it, although the assignee be not named, under

a fair interpretation of the first resolution in Spencer's case. But the assignee of the lessee was named, and, he is also, for that reason, bound under the second resolution in Spencer's case.

Further authority may be with propriety referred to. In Clegg v. Hands, 44 Ch. D., 503, the covenant related to the way in which the business at a particular house was to be carried on. Using the language of Lopes, C. J.: "It touches and concerns the demised premises; it affects the mode of enjoyment of the premises, and therefore it runs with the reversion."

The covenant in Fleetwood v. Hull, 23 Q. B. D., 35, was that the lessee would "conduct and manage the business of an inn, tavern or beer-house keeper in such proper and orderly manner or to afford no ground or pretext whatever whereby the licenses should be suspended, discontinued, forfeited, etc. Action by the assignee of the reversion to enforce right of re-entry for breach of covenant and for damages, Charles, J., in deciding the case said: "The covenant is concerned with the mode in which the premises are to be dealt with and used by the occupier, and appears to be analogous to a covenant to cultivate the lands demised in a particular manner, or to reside on the premises, or not to carry on a particular trade in them, all of which have been held to run with the land."

In the case of Mayor, etc., of Congleton, v. Pattison, 10 East., 130, Balyey, J., says: "In order to bind the assignee the covenant must either affect the land itself during the term, such as those which regard the mode of occupation. * * * Covenants to restrain the exercise of particular trades in a house fall within the first class; they affect the mode in which the property is to be enjoyed during the term;" and Lord Ellenborough expressed the same opinion in that case.

In Masury v. Southworth, 9 Ohio St., 341, Judge Gholson, among many pertinent remarks, says, at page 352:

"If the thing to be done upon the land, though not existing at the time of the demise, would be of a permanent nature. connected with the use and enjoyment of the land, and beneficial to the assignee, an intent that it should run with the land and bind the assignee, shown by naming him to the deed, would be effectual."

The learned judge shows that it is not important that the word assigns be used even though the thing to which the covenant relates be not in esse when the demise is made, for he says, referring to the resolutions in Spencer's case, that "the word assigns is not used in a technical sense and as the only word appropriate for the purpose, but that equivalent words, or any clear manifestation of intent will suffice. We think the real question must be, the covenant being one which may be annexed to the estate, whether such was the intention of the parties, as expressed in the deed." See, also, Dorr v. Harrahan, 101 Mass., 531; Cornish v. Wiessman, 43 Cent. Law Jour.,

328; 1 Smith's L. C., 341; Parkker v. Nightingale, 6 Allen, 341.

It has been shown that as this covenant affects the use and enjoyment of the estate, it is of such a nature that it may run with the land; that the employment of the word assigns shows clearly that this was the intention, and as it was a part and parcel of the thing demised inasmuch as it qualified the estate of the lessee, and was founded upon legal and reasonable grounds, it did and does run with the land.

But we are of opinion that whether, technically speaking, this covenant at law runs with the land or not, that the assignee of the leasehold took with notice of the restriction, that presumably he purchased the estate at a less price because of it, and that equity will not permit him to evade it.

The leading authority on this point is Tulk v. Moxhay, 2 Ph., 774. The plaintiff in that case was the owner of vacant ground in Leicester Square, London, and sold a piece of ground described as "Leicester Square Garden or Pleasure Ground, with the equestrian statue then standing in the center thereof, *and the iron railing and stone work, round the same, with a covenant to the effect that it should be kept open and in repair as a pleasure ground. and uncovered with any buildings, and that the tenants of the plaintiff, on payment of reasonable rent, should have admission at any time into the square or garden. After several conveyances, the defendant became the owner by deed not containing the covenant, but he had notice of it. The defendant was about to build upon the square, and was enjoined by the plaintiff The language of the Lord Chancellor Cottenham, being so pertinent, may be quoted at some length.

"That this court has jurisdiction to enforce a contract between the owner of land and his neighbor purchasing a part of it, that the latter shall either use or abstain from using the land purchased in a particular way, is what I never knew disputed. * * * It is said that, the covenant being one which does not run with the land, this court can not enforce it; but the question is, not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased. Of course the price would be affected by the covenant,, and nothing could be more inequitable than the original purchaser should be able to sell the property the next-day for a greater price, in consideration of the assignee being allowed to escape from the liability which he had himself undertaken."

And in the case of Stines v. Dorman, 25 Ohio St., 580, White, J., says at page 583:

"The stipulation relates to the mode in which the premises conveyed are to be enjoyed, and qualifies the estate. This limitation of the use enters into the consideration of the conveyance; and, if not unlaw ful, it ought upon plain principles of justice to be enforced."

To the same effect are Clegg v. Hands, 44 Ch. Div., 503; Clark v. Martin, 49 Pa. St., 289.

Heidorn's deed shows that it conveyed a leasehold. The original lease being a muniment of title, the law conclusively charges him with notice of the covenant. Stines v. Dorman, 25 Ohio St., 580; Hayes v. Railroad Company, 27 Atl. Rep., 648; Atlantic Dock Co. v. Leavitt, 54 N. Y., 35.

Whether, then, the covenant be regarded as affecting a thing in esse, for which reason it would bind the assignee, even if he were not named ; or be determined to be binding upon equitable grounds, is not material. The result to him is the same in any event, and the property can not be used for a blacksmith shop or for other than dwelling purposes.

As to the other assigned errors not urged in the argument, we also agree with the trial court. whose judgment is therefore affirmed.

C. W. Baker, and M. G. Heintz, for plaintiff in error.

Kramer & Kramer, for defendant in error.